J-S13004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIAM NEAL WILLARD, JR., | |
| Appellant | No. 1820 WDA 2013 |

Appeal from the Judgment of Sentence Entered June 12, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013647-2012

BEFORE:  BENDER, P.J.E., MUNDY, J., and STABILE, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED MARCH 05, 2015**

Appellant, William Neal Willard, appeals from the judgment of sentence of six months' probation, imposed following his conviction for theft of property delivered by mistake and conspiracy.  Appellant challenges the sufficiency of the evidence supporting these offenses.  After careful review, we affirm.

The trial court summarized the facts adduced at trial as follows:

> On August 17, 2012, Gary Campbell arrived in Albuquerque, New Mexico[,] to attend a six-week business trip touring military bases with a group of students from the Architectural Association.  Employed in the concert entertainment business, Mr. Campbell testified that he regularly went on tour for work and often times would ship back to his residence personal belongings that he did not want to take on his trips.
>
> On the evening of August 17, 2012, Mr. Campbell visited a Fed-Ex store in Albuquerque, New Mexico and shipped[3] to his residence a package containing various personal belongings that

he did not want to bring on his tour.[4]  The package contained: (i) a black duffel bag secured by black zip ties with a tag on the outside containing identifying information; (ii) a metal briefcase inside of the duffel bag that housed an iPad purchased in November of 2011, as well as paperwork containing identifying information; (iii) a "spare Samsung Galaxy phone"; (iv) a pair of new Nike shoes; (v) shirts that were considered to be rare memorabilia collector items; and (vi) "standard basic clothes" like sweatpants. Mr. Campbell testified that the value of these items totaled $4,315.[5]

___

[3] Mr. Campbell testified that he did not retain the original shipping receipt for his records.

[4] Mr. Campbell testified that he did not want to take these items with him on tour because he learned that one of the stops was in Black Rock Desert in Nevada, which was an area that he described as having "very harsh conditions" that could cause his possessions to be damaged by the "gray film of dust and crud" that he said was present in the area.

[5] Mr. Campbell testified that he paid $1,100 for the iPad, $575 for the Galaxy phone, and $140-150 for the Nike shoes.  He claimed that he was offered over $2500 for one of his memorabilia shirts alone.

___

Mr. Campbell addressed the package to his residence at 133 Meadowbrook Drive, Bethel Park, Pennsylvania 15102, and he requested signature confirmation upon delivery.  He was told that the package would arrive at his home within three (3) days. A few days passed, and Mr. Campbell's wife informed him that his package never arrived at the residence.  He contacted Fed-Ex to inquire as to the whereabouts of his shipment and was told that it had been delivered to a different address.  Mr. Campbell did not know the individuals who resided at that location so he called the authorities sometime around August 20, 2012 to report the matter.

Detective Frederick Paganico, who has been employed with the Bethel Park Police Department for twenty-three (23) years, became involved in the investigation to locate the misdelivered package.  He reviewed the original incident investigation report and learned that the package accidentally had been delivered to

a residence located at 137 Meadowbrook Drive, Bethel Park, Pennsylvania, 15102, one house down from Mr. Campbell's residence. The report also indicated that other officers from the department already had gone to 137 Meadowbrook Drive and spoken with the residents, William and Christy Willard, who confirmed their receipt of the package.[6]

_____

[6] Detective Paganico testified that he was familiar with the Willards because of their prior domestic violence disputes.

_____

On September 1, 2012, Detective Paganico called the Willards to follow up on the package and first spoke with Christy, who stated that they had received the package, but had disposed of its contents because it contained only a duffel bag with "dirty clothing and tennis shoes." She told him that they took the duffel bag and clothes to the "Red White and Blue" thrift store "on 51." Detective Paganico then spoke with [Appellant] who provided the same account. The Willards stated that there was an illegible name on the package and that the package was addressed to their home; they told Detective Paganico that they receive many packages because Christy Willard has an eBay business. Detective Paganico informed the Willards that "they were responsible for either returning the items or paying for the items that were misdelivered to their home." The Willards told the detective that he should blame Fed-Ex and further stated that they should not be held responsible for the package since it was misdelivered. Detective Paganico told them to contact him in one (1) week to let him know how they wanted to proceed.

Following his phone conversation with the Willards, Detective Paganico gathered from Mr. Campbell a more detailed list[7] of the items that were in his duffel bag and attempted to locate the items on pawn shop lists, to no avail. On September 18, 2012, he filed an application for a warrant to search the Willards' residence because he believed that some of the items were still at their home. The search warrant was executed on September 25, 2012, and Detective Paganico testified that the Bethel Park police retrieved from inside of a closet in the master bedroom a metal briefcase with a "Rolling Stones" logo sticker containing Mr. Campbell's identifying paperwork.[8] No other items were discovered in the home.[9]

_____

[7] Detective Paganico testified that he received the list from Mr. Campbell on September 5, 2012 and that items were listed in the police report as follows: (1) "Item 3 — iPad" valued at $400; (2) "Item 4 — Nokia" cell phone valued at $300; "Item 5 — Grateful Dead crew shirt" — valued at $2,500.  He also testified that he did not attempt to contact the service providers or manufacturers to see if they could locate the products.

[8] Detective Paganico testified that the papers were logged into evidence, but were not present with him in court that day.

[9] Aside from their two children, [Appellant] and Christy Willard were the only individuals who resided in the home.

_____

After being found competent to testify, thirteen (13) year-old Brandon Furniss testified on behalf of the defense.  Brandon, the son of Christy Willard, said that he came home from school one day in September[10] and saw the package sitting on his porch.  His neighbor told him that he had signed for the package, so Brandon took it inside and waited approximately one (1) hour to open it because he was waiting for his mother to get home.  Upon her arrival, Brandon testified that his mother thought it was one of her packages from eBay that was being returned and told him to open it.[11]

_____

[10] Brandon testified that he started school in September, after Labor Day.

[11] He later stated that his mother believed that the package was a racetrack.

_____

After opening the package and seeing "raggy clothes, a pair of sneakers, and a silver case," Brandon called his mother upstairs; she opened the briefcase that was inside of the duffel bag and then called his grandmother.[12]  Brandon testified that, although he saw papers inside of the briefcase that looked like they had been "ripped up and scribbled all over," he did not actually read the content of the papers.  He initially stated that there were black zip ties securing the duffel bag, but then changed his mind and said that he thought they were "clear" zip ties instead; he testified that he did not see a phone or an iPad in the bag.

Brandon relayed that after opening the package, his mother put the duffel bag inside of her bedroom closet and waited to see if anyone would claim it.

___

[12] [Appellant] was not home at the time the package was initially opened.

___

Christy Willard (also known as Christy "Furniss") is in the eBay business and as part of her job she sends and receives many packages. She testified that the package first came to her attention when she got home and saw it sitting in the kitchen. The individual who cuts her grass informed her that he had to sign for the package. She stated that the package did not have a shipping label, that it was addressed to her residence and that she could not read the name on it. After her son opened the box and called her upstairs, she testified that she thought the package was a joke because the contents were old clothing and a little briefcase that had papers that "were of no importance." Ms. Willard testified that she did not see an iPad or a phone in the bag and that both [she] and [Appellant] had spoken with Detective Paganico about the package and said that they had given the bag away.

According to her timeline, Christy Willard received the package in September after Labor Day and kept it in her closet for approximately "two to two-and-a-half weeks" to see if someone would claim it. Christy testified that, after they kept the bag for a couple of weeks, they donated the bag to the Goodwill, but kept the briefcase because it was "of some interest to them." She later testified that [Appellant] had taken the bag to the Red White and Blue store in downtown Pittsburgh at 6:00 a.m. one morning and had left it behind the building since the store had not opened yet. She stated that, if the package had contained any indication as to whom it belonged, she would have "most definitely" returned it to the owner.

Trial Court Opinion (TCO), 10/28/14, at 3-8.

The Commonwealth charged Appellant, by criminal information dated December 26, 2012, with theft of property lost by mistake, 18 Pa.C.S. § 3924, and conspiracy to commit theft of property lost by mistake, 18 Pa.C.S.

§ 903(c). Following Appellant's non-jury trial on June 12, 2013, he was convicted of both offenses and sentenced to six months' probation. The trial court amended the June 12, 2013 sentencing order with a "Corrected Order of Sentence" on June 13, 2013; however, Appellant's sentence remained the same.[1]

Appellant filed a post-sentence motion on June 17, 2013. Subsequently, the trial court held a restitution hearing on August 14, 2013; however, no restitution was imposed. A post-sentence motion hearing was held on October 16, 2013, at which time Appellant's post-sentence motion was denied.

Appellant filed a timely notice of appeal on November 15, 2013. On November 22, 2013, the trial court directed Appellant to file his Pa.R.A.P. 1925(b) statement of errors complained of on appeal by December 12, 2013. On that date, Appellant requested an extension of time to file his Rule 1925(b) statement because appellate counsel had yet to receive all of the trial transcripts. On December 19, 2013, the trial court granted Appellant's request and ordered him to file his Rule 1925(b) statement within 30 days of receiving all of the transcripts.

_____

[1] The original sentencing order had incorrectly graded Appellant's conviction for conspiracy as a third degree felony. The corrected sentencing order graded that offense as a first degree misdemeanor.

The transcripts were not filed until September 19, 2014. However, the trial court issued its Rule 1925(a) opinion on September 17, 2014. The certified record was transmitted to this Court on September 19, 2014. That same day, Appellant filed with this Court a petition to vacate the briefing schedule and remand for the filing of his Rule 1925(b) statement in accordance with the trial court's December 19, 2013 order. That petition was later amended to reflect that the trial court had issued an amended Rule 1925(a) opinion on September 23, 2014.

On September 25, 2014, this Court granted Appellant's petition and remanded this case to the trial court so that Appellant could file his Rule 1925(b) statement. Appellant filed his Rule 1925(b) statement, *nunc pro tunc*, on October 9, 2014. The trial court then issued a revised Rule 1925(a) opinion on October 28, 2014.

Appellant now presents the following questions for our review:

I. Was the evidence insufficient to convict [Appellant] of theft of property delivered by mistake when 1) there was no indication that he knew the bag was misdelivered until after the bag was already taken to the thrift store or that his wife kept some of the items in the bag, and 2) there was no indication that he intended to deprive the owner of the property when he had no knowledge of the misdelivery?

II. Was the evidence insufficient to convict [Appellant] of conspiracy to commit theft of property delivered by mistake when there was no indication that [Appellant] knew the bag was misdelivered, that he entered into an agreement to commit theft of the misdelivered bag, or that he took an overt act in furtherance of the conspiracy?

Appellant's Brief, at 5 (unnecessary capitalization omitted).

Both of Appellant's claims concern the sufficiency of the evidence supporting his convictions for theft and conspiracy. Our standard of review of sufficiency claims is well-settled:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

Appellant argues that the evidence was insufficient to convict him of theft of property delivered by mistake. That offense is defined in 18 Pa.C.S. § 3924, which reads as follows:

A person who comes into control of property of another that he knows to have been lost, mislaid, or delivered under a mistake as to the nature or amount of the property or the identity of the recipient is guilty of theft if, with intent to deprive the owner thereof, he fails to take reasonable measures to restore the property to a person entitled to have it.

18 Pa.C.S. § 3924.

Thus, to prove a violation of Section 3924, the Commonwealth must prove the following elements: 1) that a defendant came into control of property of another; 2) that he or she knew that the property had been lost,

mislaid, or misdelivered; 3) that he or she intended to deprive the owner of the property, and; 4) that he or she failed to take reasonable efforts to return the property. Appellant directs his first sufficiency claim at the Commonwealth's evidence regarding the second and third of these elements.

Appellant argues that he did not know that the property in question was misdelivered. Specifically, he asserts that there is no evidence of record demonstrating that he was present at the time his wife and stepson received the Fed Ex package, opened it, and placed the contents in the couple's bedroom closet. He also contends that he had no knowledge "about the existence of this bag of items until his wife had him deliver the bag to the thrift store, or that his wife kept some items from the bag." Appellant's Brief, at 16. Furthermore, Appellant argues that "the Commonwealth presented no evidence that [Appellant] knew this bag of items belonged to someone else until police talked to his wife about the missing bag and then spoke with him on September 1, 2012." *Id.* Because he did not know about the misdelivery, Appellant contends he also could not have formed the intent to deprive the owner of his property.

The record belies Appellant's claim when viewed in light most favorable to the Commonwealth. According to the testimony of Appellant's wife and stepson, the Willards received the misdelivered package on or about Labor Day in 2012, which fell on September 3rd of that year. Appellant's wife also testified that the contents of the package were placed in their closet, with Appellant's knowledge, and remained there for more

than two weeks while they waited to see if anyone would claim the package. After that period of time elapsed, Appellant purportedly donated the duffel bag and the clothing from the misdelivered package to a thrift store. However, Detective Paganico testified that he spoke with Appellant by phone on September 1, 2012, and Appellant acknowledged at that time that the package in question had been misdelivered to his address. Thus, there was sufficient evidence for the trial court to conclude that Appellant was aware that the property in question had been misdelivered to his home several weeks before he gave that property to a thrift store, regardless of whether he was present when the package was initially opened by his wife and stepson.

Furthermore, there was also sufficient evidence to enable the trial court to conclude that Appellant acted with the requisite intent to satisfy the third element of Section 3924. Such intent could be logically inferred from the fact that Appellant donated the misdelivered property more than two weeks after his conversation with Detective Paganico in which he acknowledged, or at least became aware, that the property had been misdelivered. Accordingly, Appellant's first sufficiency claim lacks merit.

Next, Appellant contends that the evidence was not sufficient to convict him of having conspired with his wife to commit theft of the misdelivered property.

> To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with

another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. This overt act need not be committed by the defendant; it need only be committed by a co-conspirator.

Proof of a conspiracy is almost always extracted from circumstantial evidence. The Commonwealth may present a web of evidence linking the defendant to the conspiracy beyond a reasonable doubt. The evidence must, however, rise above mere suspicion or possibility of guilty collusion. Mere association, presence at the scene, or knowledge of the crime is insufficient; the Commonwealth must prove that the defendant became an active participant in the criminal enterprise and that he had knowledge of the conspiratorial agreement.

*Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super. 2000) (internal citations, footnotes, and quotation marks omitted).

In furtherance of this claim, Appellant essentially reargues the same assertions set forth in his first claim regarding when Appellant became aware that the property had been misdelivered. However, as we discuss above, the evidence was sufficient to demonstrate that Appellant was aware that the property in question had been misdelivered long before he went to the thrift shop to donate it. To the extent that Appellant's conspiracy-related sufficiency claim relies on those same arguments, we conclude that it is meritless.

Appellant also contends that there was insufficient evidence to establish that he had formed an agreement with his wife to commit the theft offense. We disagree. The Commonwealth presented sufficient facts to establish such an agreement. Both Appellant and his wife knew the package intended for Mr. Campbell's residence had been misdelivered. After learning that fact from Detective Paganico, neither Appellant nor his wife took any

action to return that property for several weeks. Then, with Appellant's wife's knowledge, Appellant donated the duffel bag and other items to a thrift store. Finally, when the police executed a search warrant to search for the misdelivered property, Mr. Campbell's briefcase was found in the Willard's shared bedroom. Given this web of facts, the trial court had sufficient evidence to conclude that Appellant and his wife had agreed to appropriate the misdelivered property. Accordingly, we conclude that Appellant's second sufficiency claim also lacks merit.

Judgment of sentence **_affirmed_**.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/5/2015